LAW OFFICE OF
**PETER A. ROMERO**

Peter A. Romero
promero@romerolawny.com

David D. Barnhorn
dbarnhorn@romerolawny.com

January 2, 2019

**VIA ECF**
Hon. Paul E. Davison
United States Magistrate Judge
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

   Re: *Ronald Medina v. Neri's Bakery Products, Inc., et al.*
     Docket No.: 17-cv-07710 (PED)

Dear Judge Davison:

  This firm represents the Plaintiff, Ronald Medina, in the above-referenced matter, who brought claims against his former employers, Defendants Neri's Bakery Products, Inc., Dominick Neri (incorrectly sued herein as Dominic Neri) and Paul Neri for their alleged failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), failure to pay spread of hours compensation under the NYLL, and for discrimination under 42 U.S.C. § 1981 and the New York City Human Rights Law. D.E. 1. Plaintiff now submits this motion for approval, pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the parties' settlement agreement with respect to Plaintiff's FLSA claims.[1] A copy of the parties' settlement agreement is attached hereto as Exhibit A. The parties' settlement resolves Plaintiff's FLSA claims for alleged unpaid overtime compensation. The parties have explicitly excluded Plaintiff's claim for spread of hours compensation from the FLSA settlement agreement and stipulated that his spread of hours claim will be dismissed without prejudice. Plaintiff's discrimination claims have been resolved pursuant to the terms of a confidential settlement release.

**Procedural History**

  On October 9, 2017, Plaintiff filed his Complaint. D.E. 1. Thereafter, the parties exchanged certain document discovery pertaining to Plaintiff's claims. From those documents, Plaintiff's counsel was able to prepare a detailed assessment of Plaintiff's claims in this matter. On September 18, 2018, the parties participated in a successful full-day mediation conducted by Martin F. Scheinman, Esq., a mediator experienced with wage and hour and employment disputes. The FLSA settlement agreement provides for payment of a sum of $5,700.00 inclusive of attorneys' fees. Pursuant to the FLSA settlement, Plaintiff will

---

[1] The parties do not seek the Court's approval with respect to the settlement of Plaintiff's non-FLSA claims as there is no requirement for the Court to do so.

LAW OFFICE OF PETER A. ROMERO PLLC · LABOR AND EMPLOYMENT LITIGATION
825 Veterans Hwy, Hauppauge, New York 11788 · (631) 257-5588 · overtimelawny.com

receive $3,800.00, which is equal to the full value of his FLSA claims, and Plaintiff's counsel will receive a total sum of $1,900.00 (i.e. 1/3 of the settlement amount).

### The Court Should Approve the Settlement Agreement as Fair and Reasonable

FLSA claims may be dismissed with prejudice under Fed. R. Civ. P. 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-207. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Hernandez v. Merrill Lynch & Co., 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id.

In evaluating a proposed settlement of FLSA claims, courts in this Circuit typically apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The Wolinsky factors require consideration of the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Id.

In this case, Plaintiff contends that he worked as a non-exempt maintenance employee from on or about January 2017 until on or about September 29, 2017. During that time, he contends that he regularly worked overtime for the company performing his normal job duties and was paid an overtime rate for those hours worked. However, Plaintiff alleges that his supervisor, Dagoberto Santos, using his authority over him as a manager of the company, repeatedly forced him to work additional overtime hours doing work off premises, including at Santos' home, without paying him an overtime rate of pay of time and one-half his regular rate of pay – or at any rate of pay – for hours worked in excess of forty per week, in violation of the FLSA. Critically, the parties have several key disputes that impact Plaintiff's likelihood of success on his FLSA overtime claims in this lawsuit. Primarily, Defendants deny that the work Plaintiff claims to have performed at the direction of his supervisor, Santos, at Santos' home, was work performed on behalf the company and, as a result, the company should not be liable for any unpaid wages. If Plaintiff were unsuccessful in proving that the alleged work that he performed for Santos was on behalf of the company, Plaintiff would receive nothing under the FLSA. Defendants also deny that Plaintiff is entitled to liquidated damages, even if he were to succeed on his FLSA overtime claim at trial. Moreover, if Santos were the only employer liable for the disputed overtime wages, Plaintiff faces the risk in any re-filed lawsuit against Santos that Santos would not constitute an employer under the FLSA, and therefore Plaintiff would not be entitled to a recovery under the FLSA, and the risk that collecting a judgment against Santos is likely to be difficult or impossible due to his anticipated limited assets, even if Plaintiff were able to prove that Santos is liable under the FLSA.

Plaintiff has calculated his precise damages, based on the discovery in this matter and his anticipated testimony were this matter to proceed, in order to assess his best possible recovery in this litigation. Making all reasonable assumptions in his favor, Plaintiff's best

potential recovery under the FLSA at trial amounts to $1,900.00 for unpaid FLSA wages and $1,900.00 for FLSA liquidated damages.

Settling at this stage allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in full written and document discovery, depositions of Plaintiff, Defendants, and several non-party witnesses. This settlement also avoids potential partial summary judgment motion practice by either party and trial, which would result in a months' or years' long delay to obtaining a recovery for Plaintiff even if he were successful at trial, and potentially litigating future appeals. Moreover, all parties face the risk of losing at trial, either in whole or in part. Indeed, if Plaintiff were to succeed on liability but Defendants could prove that they made a good faith effort to comply with the FLSA, Plaintiff would not be entitled to liquidated damages under the FLSA, reducing Plaintiff's available FLSA damages by half to $1,900.00. Thus, by settling at this stage, Plaintiff ensures that he will receive a recovery in this matter. Further, Plaintiff's recovery under the settlement agreement provides him with 100 percent of his potential FLSA damages, even after deducting counsel's fees. Thus, assuming this settlement is approved, Plaintiff will be able to recover the settlement funds more expeditiously, and with more certainty, than a trial judgment.

Additionally, the settlement here was reached only after the parties engaged in targeted document discovery pertaining to the Plaintiff's claims, providing him with a clear assessment of his available damages, contentious settlement discussions, and mediation with the assistance of an experienced mediator. Accordingly, the settlement achieved clearly reflects an arms'-length negotiation absent from fraud or collusion and is a reasonable compromise over the contested issues in this matter.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, the release in the Settlement Agreement is limited to the wage-related claims that Plaintiff asserted in this action, and specifically excludes certain claims from release. The release does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. See Flood v. Carlson Rests. Inc., 2015 WL 4111668, at *1-2 (S.D.N.Y. July 6, 2015); Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. March 30, 2015) (prohibiting releases that "purport to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues"); Cheeks, 796 F.3d at 206 (noting judicial approval of settlements is necessary to avoid an "overbroad release" that waives all possible claims and to prevent potential abuse or overreach in settlements). Here, the release is narrowly tailored to release only wage and hour claims relevant to the instant action. Likewise, the agreement does not contain a confidentiality clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." Flood, 2015 WL 4111668, at *1 (citing Lopez, 96 F. Supp. 3d at 177-181); Cheeks, 796 F.3d at 206 (quoting Lopez, 96 F. Supp. 3d at 177) (noting judicial approval of settlements is necessary to prevent "'highly restrictive confidentiality provisions…in strong tension with the remedial purposes of the FLSA'"); Cortes v. New Creators, Inc., 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) (citing Lopez, 96 F. Supp. 3d at 177-181).

**The Court Should Approve the Requested Attorneys' Fees and Costs as Reasonable**

In addition to assessing the reasonableness of the settlement award, most courts since Cheeks have found that courts "must also assess the reasonableness of any attorneys' fee award." Velasquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing Wolinsky, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing Wolinsky, 900 F. Supp. 2d at 336).

In this case, the portion of the settlement amount attributable to attorneys' fees is $1,900.00, or 1/3 of the settlement amount relating to the overtime claims covered by the parties' FLSA settlement agreement. Plaintiff's counsel's request that the Court approve fees of 1/3 of the settlement is "consistent with the trend in this Circuit." Tiro v. Public House Investments, LLC, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); Kochilas v. Nat'l Merchant Servs., Inc., 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases). Courts in this Circuit routinely approve attorneys' fees awards in the amount of one-third of the total settlement. See McDaniel v. City of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); see also Meza v. 317 Amsterdam Corp., 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); Cregg v. Firstservice Residential N.Y., Inc., Docket No. 15-cv-3876-LB, D.E. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); Najera v. Royal Bedding Co., LLC, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); Rangel v. 639 Grand St. Meat & Produce Corp., 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery, plus costs). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. See Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success").

Additionally, the reasonableness of the fee for which approval is requested here is further solidified by "[a]pplying the lodestar method as a cross check." Guaman v. Ajna-Bar NYC, 2013 WL 445896, at *1 (S.D.N.Y. Feb. 5, 2013) (citing Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)). In order to calculate the lodestar check, the Firm multiplied the attorney hours spent on the case by each individual's reasonable hourly rate. See Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007).

With respect to Peter A. Romero's experience, Mr. Romero graduated from St. John's University School of Law in 2003. He was admitted to practice in New York in November 2003, the United States District Court for the Southern District of New York in August 2004 and the United States District Court for the Eastern District of New York in October 2004.

Mr. Romero previously worked for a prominent employment law litigation firm as an associate from July 2004 until January 2009 and as a partner from January 2009 until June 2015. Thereafter, beginning in June 2015 through the present, Mr. Romero has operated his own employment law litigation firm, the Law Office of Peter A. Romero PLLC, as its principle. That firm employs one senior associate, the undersigned, David D. Barnhorn, Esq., and a paralegal, as well as other part-time support staff on an as-needed basis. Throughout his legal career, beginning in July 2004 through the present, Mr. Romero has focused his practice almost entirely on employment law litigation, where a majority of his cases have been comprised of individual, collective action and class action wage and hour lawsuits in federal and New York courts. Moreover, throughout his career, Mr. Romero has conducted numerous trials and arbitrations on behalf of his clients in employment law disputes, including wage and hour matters. Finally, while employed as a partner at another firm from January 2009 until June 2015, Mr. Romero was responsible not only for his own case load of employment law litigation matters, but also for supervising, and revising and approving the work of, four associates who each had their own case load of employment law litigation matters, including wage and hour matters.

The undersigned, David D. Barnhorn, Esq., graduated *cum laude* from Hofstra University Maurice A. Deane School of Law in 2012. I was admitted to practice in New Jersey and the United States District Court for the District of New Jersey in 2012, in New York in 2013, and the United States District Courts for the Eastern and Southern Districts of New York in 2014. I have been employed as a senior associate for this firm since April 2018. Prior to joining this firm, I worked as an associate at two prominent employment law litigation firms from November 2012 until April 2018. Throughout my legal career, beginning in November 2012 through the present, I have focused my practice almost entirely on employment law litigation, where a majority of my cases have been comprised of individual, collective action and class action wage and hour lawsuits in New York and New Jersey state and federal courts. Throughout my time as an associate, I have been responsible for actively handling and maintaining a case load of between 30 to 45 cases at any given time in pre-litigation stages, arbitration, administrative agencies and in litigation in state and federal court from their inception through trial, appeal and resolution. Moreover, during my career, I have conducted numerous trials and arbitrations on behalf of my clients in employment law disputes, including wage and hour matters. With respect to this matter, I have acted as lead counsel for the Plaintiff for nearly the entire case, since filing a Notice of Appearance on April 20, 2018. D.E. 15.

Here, if Plaintiff's counsel were seeking fees pursuant to the lodestar, Plaintiff would seek hourly rates of $400.00 per hour for Peter A. Romero, Esq. and $300.00 per hour for the undersigned, David D. Barnhorn, Esq. "A reasonable hourly rate is 'the rate a paying client would be willing to pay,' 'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'" Spain v. Kinder Stuff 2010 LLC, 2015 WL 5772190, at *8 (E.D.N.Y. Sept. 29, 2015) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008)). "The reasonable hourly rates should be based on rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Id. (quoting Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotation marks omitted)). Here, based on the customary rates charged in this district and the experience of the attorneys responsible for this matter, hourly rates of $400.00

per hour for Mr. Romero and $300.00 per hour for the undersigned are reasonable. HRB Prof'l Res. LLC v. Bello, 2018 WL 4629124, at *8 (S.D.N.Y. Sept. 27, 2018) (collecting cases) (awarding a partner a rate of $440.00 per hour and citing approvingly of cases awarding partners and experienced litigators rates of $400.00 to $600.00 per hour and associates rates of $300.00 per hour); Pineda v. Frisolino, Inc., 2018 WL 3628898, at *2 (S.D.N.Y. July 30, 2018) (approving rates for partner and senior associate at $400.00 per hour and other associates at $300.00 per hour in FLSA and NYLL litigation); Payne v. Kirkland, 2017 WL 5952707, at *3-4 (S.D.N.Y. Nov. 30, 2017) (noting partners in small firms have been awarded rates of $550 to $650 per hour, and awarding partner with 13 years of specialized experience in civil rights cases a rate at $475.00 per hour); Polit v. Glob. Foods Int'l Corp., 2017 WL 1373907, at *8 (S.D.N.Y. Apr. 13, 2017) (awarding rate of $300.00 per hour to associate with four years of experience who acted as lead counsel in FLSA case); Torres v. Gristede's Operating Corp., 2012 WL 3878144, at *3 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 F. Appx. 1 (2d Cir. 2013) (citing Clover v. Shiva Realty of Mulberry, Inc., 2011 WL 1832581, at *1 (S.D.N.Y. May 13, 2011)) (noting, more than six years ago, in FLSA and NYLL matter that "[c]onsistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time."); Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 2010 WL 4159391, at *8 (S.D.N.Y. Sept. 30, 2010) (citing LV v. New York City Dept. of Educ., 700 F. Supp. 2d 510, 518-25 (S.D.N.Y 2010)) (noting in FLSA and NYLL matter that "[t]he rates sought by plaintiffs' counsel ($400 for partners, $350 for litigation counsel, $300 for associates with three to seven years of experience, and $200 for associates with one to two years of experience) are consistent with (or lower than) the rates used in other cases involving attorney fee awards..."); Saunders v. City of New York, 2009 WL 4729948, at *8 (S.D.N.Y. Dec. 9, 2009) (approving rate, more than nine years ago, of $425.00 per hour for partner $300 for senior associate, and $250 per hour for junior associate with approximately four years of experience in FLSA matter); New York Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc., 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (approving rate of $425.00 per hour for partners and $300.00 per hour for associates in ERISA matter); New York City Dist. Council of Carpenters Pension Fund v. Quantum Const., 2008 WL 5159777, at *13 (S.D.N.Y. Dec. 9, 2008) (approving rate of $425.00 per hour for partners and $300.00 per hour for associates in ERISA matter).

Here, Plaintiff's counsel researched and investigated the Plaintiff's claims, conducted an in-depth and detailed inquiry regarding Plaintiff's job duties, non-exempt status, his work hours and compensation received, commenced this action, exchanged document discovery, prepared a detailed damages assessment, attended a mediation, and negotiated a settlement. Due to the contingent nature of the case, Plaintiff's counsel undertook these efforts with no ultimate guarantee of compensation. Plaintiff's counsel was zealous in the pursuit of Plaintiff's litigation objectives and secured a favorable result on the Plaintiff's behalf. The settlement will be made available to the Plaintiff without the uncertainty and delay of trial.

The Firm expended a total of 91.4 hours on this matter, as evidenced by counsel's contemporaneously-kept billing records, which are annexed hereto as Exhibit B. Thus, Plaintiff's attorneys' fees in this matter, when calculated pursuant to the lodestar, amount to

$27,005.00.² Thus, the amount of attorneys' fees sought – $1,900.00 – is well below the amount of fees actually incurred litigating this matter.

Accordingly, Plaintiff's counsel's request for attorneys' fees in the amount of $1,900.00 should be approved as reasonable.

In light of the foregoing, the parties respectfully request that the Court approve their settlement and dismiss this matter with prejudice, while maintaining jurisdiction to enforce the terms of the settlement. A Proposed Stipulation and Order of Dismissal with Prejudice approving the terms of the parties' FLSA settlement agreement is annexed as Exhibit A to the parties' settlement agreement.

Respectfully submitted,

   /S/ David D. Barnhorn
DAVID D. BARNHORN, ESQ.

C:   All Counsel of Record *via* ECF

---

² Notably, Plaintiff's counsel has not sought reimbursement for time spent on this matter by their paralegal or a part-time intern who worked on this matter, which would increase this lodestar sum even further if their time were included.